# EXHIBIT 1

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
12/21/2022 7:19:53 PM
Filing ID 15301066

Bartlet A. Brebner, Esq. – 011785
bbrebner@brebnerlaw.com
THE BREBNER LAW FIRM, P.C.
4647 North 32nd Street, Ste. 285
Phoenix, Arizona 85018
(602) 230-9554
(602) 230-7499-Fax
*Attorney for Plaintiffs*

**SUPERIOR COURT**

**STATE OF ARIZONA, COUNTY OF MARICOPA**

| | |
|---|---|
| ALEXANDRA LEE HARRIS and JAMES LEO HARRIS, spouses,<br><br>Plaintiffs,<br><br>vs.<br><br>VALENTINO SATOSHI VANDERBILT A.K.A. JEDDIDIAH SCHULZ and NURIA VANDERBILT, spouses; LYFT, INC., a Delaware corporation; JOHN DOES 1-5; JANE DOES 1-5;<br><br>Defendants. | Case No. CV2022-016907<br><br>**COMPLAINT**<br><br>(Tort Non-Motor Vehicle) |

Plaintiffs for their Complaint against Defendants state and allege as follows:

1. At all relevant times, Plaintiff Alexandra Lee Harris is a resident of Maricopa County, Arizona. Plaintiff Alexandra Harris is married to Plaintiff James Leo Harris.

2. At all relevant times, Plaintiff James Harris is a resident of Maricopa County, Arizona.

3. Defendant Valentino Satoshi Vanderbilt is also known as Jeddidiah Schulz.

4.      For the proposes of this Complaint, in light of the allegation that Defendant Valentino Satoshi Vanderbilt and Defendant Jeddidiah Schulz are the same person, such person shall be hereinafter referred to as "Vanderbilt/Schulz".

5.      The date of birth of Defendant Vanderbilt/Schulz is March 2, 1984.

6.      At all relevant times, Defendant Vanderbilt/Schulz is a resident of Maricopa County, Arizona. It is unknown at this time whether Defendant Vanderbilt/Schulz is married or single, and, therefore, Defendant Vanderbilt/Schulz's spouse, if any, is alleged with a fictitious name, which shall be replaced with his or her true name upon further discovery and leave of court to amend.  At all times relevant hereto, Defendant Vanderbilt/Schulz, if married, was acting on behalf of his marital community.

7.      Upon information and belief, at all relevant times, Defendant Nuria Vanderbilt is a resident of Clark County, Nevada. It is unknown at this time whether Defendant Nuria Vanderbilt is married or single, and, therefore, Defendant Nuria Vanderbilt's spouse, if any, is alleged with a fictitious name, which shall be replaced with his or her true name upon further discovery and leave of court to amend.  At all times relevant hereto, Defendant Nuria Vanderbilt, if married, was acting on behalf of her marital community.

8.      Upon information and belief, at all relevant times, Defendant Vanderbilt/Schulz and Defendant Nuria Vanderbilt were married to one another.

9.      Upon information and belief, Defendant Vanderbilt/Schulz and Defendant Nuria Vanderbilt were married in Maricopa County, Arizona on February 1, 2019.

10. The maiden name of Defendant Nuria Vanderbilt is Nuria Ratcliff.

11. At all relevant times, Defendant Lyft, Inc., ("Lyft"), is a Delaware corporation licensed to do business in Arizona.

12. The conduct, transactions, events and occurrences relate to a sexual assault on September 17, 2022 in Maricopa County, Arizona.

13. Jurisdiction and venue are proper in this Court.

14. Plaintiffs' damages are such as to qualify for a specified tier defined by Rule 26.2(c)(3), Ariz. R. Civ. P.

15. This is a Tier 3 Case.

16. In Arizona, Defendant Lyft markets itself as the best option for a safe ride home after a night of drinking, a service that is always in reach making drunk driving a thing of the past.

17. What Defendant Lyft does not share with passengers is that making the choice to hail a ride after drinking also puts them in peril from Defendant Lyft's drivers themselves. By marketing heavily toward people who have been drinking, especially younger women, while claiming that passenger safety it its priority, Defendant Lyft is instead putting these women at risk.

18. As Defendant Lyft is a common carrier in Arizona, it had an affirmative duty to protect passengers including Plaintiff Alexandra Harris, for which a special relationship exists, from harm, including the intentional sexual assault committed by her Defendant Lyft approved driver Defendant Vanderbilt/Schulz.

19.     Defendant Lyft is a technology company that owns and maintains an application, a website and a technology platform.

20.     Defendant Lyft is a ride-hailing company that connects drivers and members of the public through a downloadable smartphone application ("app") called Lyft. Consumers who have downloaded the app use it to make a request. They are matched by Defendant Lyft with a Defendant Lyft approved driver, who picks them up and drives them to a designated destination. App users must pay for the ride through the application with a credit or debit card. Defendant Lyft pays the driver a share of the fare collected and retains the remainder.

21.     Defendant Lyft's business model requires an enormous pool of drivers in order to provide rides to consumers quickly and efficiently. To accomplish this, Defendant Lyft solicits and retains thousands of non-professional drivers.

22.     Defendant Lyft expanded nationally by entering metropolitan areas in the United States and ignoring long-standing legal and regulatory authority for taxi and limousine services. Laws in Arizona exist for many of the safety concerns raised in this lawsuit. By flouting safety regulations and by hiring non-professional drivers, Defendant Lyft infiltrated the Arizona market in a rapid manner that would not otherwise have been possible through traditional methods.

23.     Defendant Lyft is a common carrier in Arizona and its drivers are agents that provide a service to Defendant Lyft.

24.     Defendant Lyft provides rides to members of the public for a fee. Defendant Lyft does this as enterprise engaged in selling rides in the same way that a private taxi service sells rides.

25.     When Defendant Lyft agrees with a consumer via the app to carry out a contract of transportation, drivers are the individuals who pick up the passenger(s) at a certain location and transport the passenger(s) to a certain location. The fact that Defendant Lyft utilizes software to contract with consumers does not alter the essence of its business enterprise - namely, that of a transportation provider.

26.     When drivers perform the transport in Arizona, they are the legal "agents" of Defendant Lyft. At all times, Defendant Lyft is the principal in the relationship. Use of an app to organize the rides does nothing to alter the agent/principal relationship. In fact, the app is simply a modern version of the traditional method where consumers had to telephone a taxi company in order to arrange for a ride.

27.     Consumers can, and often do, use the app to order a Defendant Lyft ride when they are on the street. Using the app eliminates a person from raising their arm in a traditional street "hail" but, effectively, the Defendant Lyft app is no different from hailing a taxi, but for the fact that the consumer has a credit or debit card on file with Defendant Lyft and the monetary transaction takes place via the app.

28.     When drivers perform the transportation in Arizona, they are acting at all times pursuant to Defendant Lyft's control and serve to carry out the performance on behalf of Defendant Lyft. In connection with this, all money is exchanged between

consumers and Defendant Lyft, and all agreements about the transportation service flow between consumers and Defendant Lyft.

29.     At no time do passengers personally contract with drivers for transport in exchange for a fee. Defendant Lyft, not its drivers, is the sole decision-maker when it comes to pricing, rates, fares, or payments provided.

30.     Consumers pay Defendant Lyft; Defendant Lyft pays its drivers.

31.     As Defendant Lyft is a transportation company that provides rides to the general public in Arizona for a fee, it is subject to laws governing common carriers.

32.     When drivers carry out a contract of transportation for Defendant Lyft in Arizona, Defendant Lyft is under a non-delegable duty to transport passengers safely.

33.     At all times, drivers, whether labeled "agents" or "employees" of Defendant Lyft, also are held to transport passengers in Arizona according to the appropriate standard of care.

34.     In connection with these duties of care, Defendant Lyft is required to make policy and protocol decisions at upper corporate management levels to ensure that due care is exercised in the transport of passengers in Arizona.

35.     Defendant Lyft employs its drivers in at-will relationships in which Defendant Lyft has the discretion to fire its drivers for any reason at any time.

36.     Drivers are not charged a fee by Defendant Lyft to become employees.

37.     Drivers are not charged a fee by Defendant Lyft to download the app to receive notifications of rides controlled by Defendant Lyft.

38.     Fare prices are set exclusively by Defendant Lyft. Drivers have no input on fares charged to consumers. Drivers are not permitted to negotiate with consumers on fares charged.

39.     Defendant Lyft can and does directly modify charges to consumers if Defendant Lyft determines that a driver has taken a circuitous route to a destination.

40.     Defendant Lyft takes a fee of every ride charged to a consumer.

41.     Defendant Lyft controls its drivers' contracts with its consumer base. Defendant Lyft considers its consumer list to be proprietary information. To that end, drivers are not permitted to answer passenger inquiries about booking future rides outside of the Defendant Lyft app.

42.     Defendant Lyft requires its drivers to accept ride requests when drivers are logged into the app. Drivers who reject too many ride requests risk facing discipline, including suspension or termination.

43.     Consumers give feedback on rides they have taken, and rate drivers on a scale from 1-5 stars. These ratings are used by Defendant Lyft to discipline and terminate drivers.

44.     Defendant Lyft claims that drivers in Arizona are not at-will employees but rather independent contractors. The value of Defendant Lyft classifying drivers as independent contractors is an integral part of the ride-hailing company's business model, and has saved Defendant Lyft millions of dollars.

45.     As a calculated cost saving method, Defendant Lyft uses a procedure to review a potential driver's background that is flawed. Specifically, the background

checking methods used by Defendant Lyft cannot assure passengers that the driver does not have a history of violence or other background information that would cause a reasonable company to make further inquiries into a potential driver's history.

46.    To become a driver in Arizona for Defendant Lyft, individuals need only complete a limited application that involves filing out a few short forms and producing photos of a drivers' license, vehicle registration, and proof of insurance.

47.    Defendant Lyft's inadequate background checks and inadequate commitment to safety have exposed countless passengers in Arizona to significant hazards and risks, including young women.

48.    At the time of Defendant Vanderbilt/Schulz's application to be a driver for Defendant Lyft, Defendant Lyft utilized a flawed system that did not result in an adequate background check of Defendant Vanderbilt/Schulz.

49.    If an appropriate system been in place, then Defendant Lyft would have known of Defendant Vanderbilt/Schulz's criminal activities.

50.    Defendant Lyft's background check into Defendant Vanderbilt/Schulz either failed to discover his pre-September 17, 2022 illegal actions or willfully chose to risk passengers' lives in exchange for the additional profit one more driver could provide.

51.    The acts and omissions of Defendants with respect to the events described herein relating to Plaintiff Alexandra Harris were outrageous and undertaken with reckless indifference to the rights and interests of others, including Plaintiff Alexandra Harris.

52.     Defendant Lyft is vicariously liable for the injuries that Defendant Vanderbilt/Schulz sexual assault caused to Plaintiff Alexandra Harris.

53.     Defendant Lyft is vicariously liable for the injuries that Defendant Vanderbilt/Schulz caused to Plaintiff James Harris.

54.     The acts and omissions of Defendants with respect to the events relating to Plaintiff Alexandra Harris described herein were intentional and intended to cause injury.

55.     Plaintiff Alexandra Harris is a female passenger that Defendant Lyft failed to protect.

56.     At all times material hereto, Defendant Vanderbilt/Schulz was acting as an agent or servant of Defendant Lyft.

57.     As Defendant Vanderbilt/Schulz was acting as an agent of Defendant Lyft at the time he sexually assaulted Plaintiff Alexandra Harris, Defendant Lyft is liable for his actions.

58.     At all times material hereto, Defendant Vanderbilt/Schulz was an authorized driver for Defendant Lyft.

59.     At all times material hereto, Defendant Vanderbilt/Schulz and Defendant Lyft were acting in concert.

60.     On the evening of September 16, 2022, Plaintiff Alexandra Harris consumed numerous alcoholic drinks.

61.     In the late evening of September 16, 2022, Plaintiff Alexandra Harris was significantly intoxicated.

62.     A co-worker, David Sesmas, recognized that Plaintiff Alexandra Harris was intoxicated.

63.     David Sesmas observed that Plaintiff Alexandra Harris could barely walk on her own, barely stand on her own, and barely keep her eyes open.

64.     Early on September 17, 2022, David Sesmas requested a ride for the benefit of Plaintiff Alexandra Harris from Defendant Lyft's application on Plaintiff Alexandra Harris's mobile device.

65.     On September 17, 2022, the pickup location specified in Defendant Lyft's application was 141 North Gilbert Road, Gilbert, Arizona.

66.     On September 17, 2022, the drop-off location specified in Defendant Lyft's application was 954 South Helms Circle, Mesa, Arizona.

67.     On September 17, 2022, David Sesmas accepted, for the benefit of Plaintiff Alexandra Harris, a ride from Defendant Lyft's application on Plaintiff Alexandra Harris's mobile device.

68.     On September 17, 2022, at approximately 12:16 a.m., Plaintiff Alexandra Harris entered a Tesla driven by Defendant Vanderbilt/Schulz to become a passenger.

69.     Defendant Vanderbilt/Schulz asked Plaintiff Alexandra Harris to enter the Tesla through the right front door.

70.     Defendant Vanderbilt/Schulz instructed Plaintiff Alexandra Harris to sit in the front right seat.

71.     Plaintiff Alexandra Harris became a passenger in Defendant Vanderbilt/Schulz's Tesla in the front right seat.

72.     On September 17, 2022, at approximately 12:24 a.m., Plaintiff Alexandra Harris and Defendant Vanderbilt/Schulz arrived at a Circle K store located at 503 North Gilbert Road, Gilbert, Arizona, 85234.

73.     At the Circle K, Plaintiff Alexandra Harris was leaning on Defendant Vanderbilt/Schulz for physical support to walk when she walked from the Tesla into the Circle K.

74.     At the Circle K, Plaintiff Alexandra Harris was leaning on Defendant Vanderbilt/Schulz for physical support to walk when she walked from the Circle K to Defendant Vanderbilt/Schulz's Tesla.

75.     At approximately 12:33 a.m., Defendant Vanderbilt/Schulz drove the Tesla out of the Circle K parking lot and turned northbound on Gilbert Road.

76.     At approximately 12:41 a.m., Plaintiff Alexandra Harris and Defendant Vanderbilt/Schulz arrived at 954 South Helms Circle, Mesa, Arizona.

77.     On September 17, 2022, 954 South Helms Circle, Mesa, Arizona ("Residence") was the residence of Plaintiff Alexandra Harris.

78.     When Defendant Vanderbilt/Schulz drove up to the Residence, he determined that Plaintiff Alexandra Harris was not conscious.

79.     Immediately after stopping his Tesla at the Residence, Defendant Vanderbilt/Schulz tried unsuccessfully to make Plaintiff Alexandra Harris become conscious.

80.     While at the Residence, Defendant Vanderbilt/Schulz did not physically try to remove Plaintiff Alexandra Harris from his Tesla.

81.     While at the Residence, Defendant Vanderbilt/Schulz did not approach any dwelling structure on grounds of the Residence in any manner that would prompt an occupant of any structure on the grounds of the Residence to interact with Defendant Vanderbilt/Schulz.

82.     While at the Residence, Defendant Vanderbilt/Schulz did not approach any structure on grounds of the Residence in any manner that would prompt an occupant of any structure on the grounds of the Residence to interact with Plaintiff Alexandra Harris.

83.     Defendant Vanderbilt/Schulz drove his Tesla, with Plaintiff Alexandra Harris in the front seat, from the Residence's address to Defendant Vanderbilt/Schulz's residence. The residence address to which Defendant Vanderbilt/Schulz drove is 1450 South Cooper Road, Unit 2039, Chandler, Arizona, 85286 ("Apartment").

84.     Upon arriving at the Apartment's parking lot, Defendant Vanderbilt/Schulz parked his Tesla in a parking spot.

85.     After parking his Tesla, Defendant Vanderbilt/Schulz provided physical support to Plaintiff Alexandra Harris to go up exterior steps to Unit 2039.

86.     Defendant Vanderbilt/Schulz had access to Unit 2039.

87.     Defendant Vanderbilt/Schulz helped Plaintiff Alexandra Harris enter Unit 2039.

88.     It was approximately 1:00 a.m. on September 17, 2022, when Defendant Vanderbilt/Schulz and Plaintiff Alexandra Harris entered Unit 2039.

89.     When Defendant Vanderbilt/Schulz and Plaintiff Alexandra Harris entered Unit 2039, Plaintiff was unconscious. From the time that Defendant Vanderbilt/Schulz

and Plaintiff Alexandra Harris entered the Apartment, until approximately 7:20 a.m. on September 17, 2022, Plaintiff Alexandra Harris was unconscious.

90.     After Plaintiff Alexandra Harris did not enter at the Residence in which Plaintiff James Harris was located, Plaintiff James Harris became concerned for her safety. He tried to electronically communicate with Plaintiff Alexandra Harris, beginning at approximately 1:39:19 a.m. using his phone and Plaintiff Alexandra Harris's phone.

91.     At approximately 2:25:32 a.m., Plaintiff Alexandra Harris and Plaintiff James Harris spoke by phone with one another using their respective phones.

92.     Near the end of such telephone conversation, Plaintiff James Harris perceived that someone took Plaintiff Alexandra Harris's phone from her because her voice was getting quieter.

93.     As Plaintiff James Harris became more concerned about the safety of Plaintiff Alexandra Harris, Plaintiff James Harris contacted the City of Mesa Police Department and, thereafter, the City of Chandler Police Department.

94.     At approximately 7:40 a.m., the Chandler Police Department arrived at the parking lot of the Apartment and found Plaintiff Alexandra Harris outside near the parking lot.

95.     Between approximately 1:00 a.m. and 7:20 a.m., Defendant Vanderbilt/Schulz took actions to remove all of Plaintiff Alexandra Harris's clothes.

96.     Between approximately 1:00 a.m. and 7:20 a.m., Defendant Vanderbilt/Schulz physically interacted with Plaintiff Alexandra Harris's body such that his body had contact with her body.

97.     Between approximately 1:00 a.m. and 7:20 a.m., Defendant Vanderbilt/Schulz touched Plaintiff Alexandra Harris's vagina.

98.     Between approximately 1:00 a.m. and 7:20 a.m., Defendant Vanderbilt/Schulz intentionally touched Plaintiff Alexandra Harris's vagina.

99.     Between approximately 1:00 a.m. and 7:20 a.m., Defendant Vanderbilt/Schulz performed cunnilingus on Plaintiff Alexandra Harris.

100.    Plaintiff Alexandra Harris did not consent to the cunnilingus.

101.    Between approximately 1:00 a.m. and 7:20 a.m., Defendant Vanderbilt/Schulz intentionally used his mouth to touch Plaintiff Alexandra Harris's vagina.

102.    Plaintiff Alexandra Harris did not consent to Defendant Vanderbilt/Schulz touching her vagina.

103.    Cunnilingus can be a risk for contracting sexually transmitted infections.

104.    Chlamydia can be transmitted by a person placing his mouth on a woman's vagina.

105.    Human papillomavirus can be transmitted by a person placing his mouth on a woman's vagina.

106.    Gonorrhea can be transmitted by a person placing his mouth on a woman's vagina.

107.    Syphilis can be transmitted by a person placing his mouth on a woman's vagina.

108.   Herpes can be transmitted by a person placing his mouth on a woman's vagina.

109.   Hepatitis can be transmitted by a person placing his mouth on a woman's vagina.

110.   At approximately 7:30 a.m. on September 17, 2022, Defendant Vanderbilt/Schulz had a verbal conversation with Plaintiff Alexandra Harris.

111.   During such conversation, Defendant Vanderbilt/Schulz told Plaintiff Alexandra Harris that he had intentionally placed his mouth on her vagina.

112.   During such conversation, Plaintiff Alexandra Harris learned for the first time that Defendant Vanderbilt/Schulz had placed his mouth on her vagina.

113.   Shortly following his conversation with Plaintiff Alexandra Harris in which he told her that he had put his mouth on her vagina, Defendant Vanderbilt/Schulz had a conversation with a City of Chandler police officer, who had driven into the parking lot of the Apartment while searching for Plaintiff Alexandra Harris.

114.   During such conversation with the police officer, Defendant Vanderbilt/Schulz told the officer that he had put his mouth on Plaintiff Alexandra Harris's vagina.

115.   Following such conversation, the Chandler Police Department conducted a sexual assault investigation.

116.   Upon information and belief, Defendant Vanderbilt/Schulz will be arrested and prosecuted for sexually assaulting Plaintiff Alexandra Harris.

117.   The Chandler Police Department General Offense Report GO# CH 2022-108120, states, inter alia, the following:

### SUMMARY OF FORENSIC PHONE DOWNLOAD:

I received the forensic download of Allie's cellphone and looked through the data for 09/16/2022 – 09/17/2022. Allie had mentioned to me her watch had been removed in the night, but she did not recall doing this. Allie's health sensor data showed no recorded heart rate from about 0144 hours to 0731 hours when her heart rate registered at 108 beats per minute. Allie's heart rate recorded a high of 122 beats per minute several times at around 0738-0738 hours. At 0144 hours, the last time her heart rate was registered before the time gap, Allie's heart rate was 80 beats per minute.

It should be noted that the downloaded data I requested shows health and activity information from 2300 on 09/15/2022 to 2356 hours on 09/16/2022. Allie's heart rate was not recorded prior to 2108 hours on 09/16/2022.

Allie has voicemails from Jimmy at 0144 hours and 0319 hours. The voicemail left at 0144 hours is Jimmy inquiring where to pick Allie up from. The voicemail at 0319 hours is Jimmy telling Allie the police are looking for her and he is scared. At 0244, 0300, 0329 and 0348 hours, Allie received voicemails from Mesa Police Department. Allie's phone report also shows her call log. Allie missed or otherwise did not answer multiple phone calls from Jimmy Harris. One phone call was answered at 0225 hours, and was 4:46.

Allie's last outgoing phone call during the early morning hours on 09/17/2022 was to "Michael" (602-653-7281). That phone call lasted for 4:01. Allie did not make another outgoing phone call until 0721 hours to "Baby Daddy".

Allie's text messages were also observed for the requested time frame. Allie receives a text from "Michael" also listed as "Dadddddddy" (602-653-7281) at 0031 hours asking her to let him know when she made it home. At 0409 hours, Mesa Police Department Sergeant Goodrich texted Allie asking her to call him.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I conducted a criminal history check of Valentino Vanderbilt and learned he had another identity of Jedidiah Schulz. According to a police report authored by San Bernardino County Sheriff's Department (report number [Redacted on Report]), Valentino legally changed his name in 2018. In this report, the deputy documented that Valentino had stolen at least one cat and refused to return it to the owner. SBCSD then identified a small child, approximately three years in age, named Valentino Vanderbilt (identified in Apple Valley Police Department report [Redacted on Report]). This child reported that he was forced to sleep in a closet because "my dad's a dick." SBCSD deputies were contacted by social workers from the California Child Protective Services who provided them with contact information for Nuria Vanderbilt, who lived in Minnesota. Nuria reported that, while living in Las Vegas, she and Valentino were married. He became violent towards her, prompting her to file for an order of protection. While filing the paperwork, Vanderbilt (AKA Jedidiah), took their belongings and their son and fled the State of Nevada.

I contacted Deputy K. Watson #D3404 from San Bernardino County Sheriff's Office and confirmed that Valentino was not pending any charges from his case. I asked if Valentino had been the subject of a kidnapping investigation. Deputy Watson informed me that Clark County Sheriff's Office (Nevada) had been contacted and no kidnapping report was ever filed by Nuria. Deputy Watson told me Valentino may have pending federal charges in the State of Colorado for the illegal purchase of a large jungle cat which escaped its containment during its transit by air. This information could not be confirmed at the time of this report.

Nuria allegedly reported this to the National Center for Missing and Exploited Children, however, I have not located any police reports regarding kidnapping. I did locate a report number from Apple Valley Police Department in Minnesota (report [Redacted on Report]), which shows a sexual offense on 06/17/2022 with Jedidiah (AKA Valentino) as the listed

1  suspect. An additional Apple Valley report ([Redacted on
2  Report]) was also located after requesting the reports.

3  [Redacted on Report]: Nuria Vanderbilt arrived to the AVPD
   lobby and requested to file a missing persons report regarding
4  her son who was with Valentino in California. Officer P.
   Meuwissen #4917 spoke with her. She requested that the
5  report made to AVPD be forwarded to Las Vegas
   Metropolitan Police Department. It is not known from this
6  report if any information was forwarded to LVMPD.

7  [Redacted on Report]: On 06/17/2022, Nuria arrived to the
   AVPD lobby to report receiving harassing text messages from
8  Valentino. Charges were filed with the local city attorney's
9  office.

10  118.   Driving from the Defendant Lyft designated pick-up location (141 North

11  Gilbert Road, Gilbert, Arizona) to the Defendant Lyft designated drop off location (954

12  South Helms Circle, Mesa, Arizona) should have only taken 10-15 minutes.

13  119.   The distance, time and route to the selected destination was known to and

14  continuously monitored by Defendant Lyft.

15  120.   In the early morning of September 17, 2022, Defendant Vanderbilt/Schulz

16  deviated from the Defendant Lyft directed route, Defendant Lyft designated time, and

17  Defendant Lyft directed destination in the transport of Plaintiff Alexandra Harris.

18

19  121.   Defendant Lyft driver Defendant Vanderbilt/Schulz instead took a path

20  outside of Defendant Lyft's designated route, shopped at Circle K, stopped the ride timer

21  when he supposedly dropped off at Plaintiff Alexandra Harris's designated location, took

22  Plaintiff Alexandra Harris to his apartment (a significant distance away from Plaintiff

23  Alexandra Harris's designated drop off location), and sexually assaulted Plaintiff

24  Alexandra Harris at his Apartment.

25

122.   Defendant Lyft's protocols and policy require that drivers such as Defendant Vanderbilt/Schulz to proceed consistent with the path, time and designated drop location and to only turn off the trip timer once the passenger has arrived at the designated destination.

123.   Defendant Lyft driver Defendant Vanderbilt/Schulz materially deviated from Defendant Lyft's protocols and policy when he diverted from the path, time, and designated drop location for Defendant Lyft passenger Plaintiff Alexandra Harris.

124.   Defendant Lyft continuously monitors the activities of drivers and trip related data through its application. Defendant Lyft's monitoring included the activities of Defendant Vanderbilt/Schulz in the early morning of September 17, 2022.

125.   Defendant Lyft knew of the potential for hazard and risk to its passenger Plaintiff Alexandra Harris occasioned by the material deviations executed by Defendant Lyft driver Defendant Vanderbilt/Schulz.

126.   Defendant Lyft should have known of the potential for hazard and risk to its passenger Plaintiff Alexandra Harris occasioned by the material deviations executed by Defendant Lyft driver Defendant Vanderbilt/Schulz.

127.   After the September 17, 2022 sexual assault, Plaintiff Alexandra Harris learned Defendant Vanderbilt/Schulz had been sentenced for child cruelty in California in June, 2022.

128.   Prior to September 17, 2022, Defendant Vanderbilt/Schulz had a history of criminal conduct.

129.   In the event Defendant Lyft had known all the information stated in this Complaint involving Defendant Vanderbilt/Schulz that took place prior to September 17, 2022, Defendant Lyft would not have permitted Defendant Vanderbilt/Schulz to provide transportation to Plaintiff Alexandra Harris on September 17, 2022.

130.   In the event Defendant Lyft had known some of the information stated in this Complaint involving Defendant Vanderbilt/Schulz that took place prior to September 17, 2022, Defendant Lyft would not have permitted Defendant Vanderbilt/Schulz to provide transportation to Plaintiff Alexandra Harris on September 17, 2022.

131.   Prior to September 17, 2022, Defendant Vanderbilt/Schulz had a history of misconduct that indicate he posed an undue risk of harm to others.

132.   Prior to September 17, 2022, Defendant Lyft knew, should have known, or failed to discover information that would have put Defendant Lyft on notice that Defendant Vanderbilt/Schulz did not qualify as a Lyft driver to transport Plaintiff Alexandra Harris.

133.   Prior to September 17, 2022, Defendant Vanderbilt/Schulz had a history of criminal conduct, which can be obtained by conducting a less than five minute search of the Internet.

134.   On or about November 9, 2020, Defendant Nuria Vanderbilt, as Plaintiff, filed a Complaint for Divorce in Nevada against "Valentino Satoshi Vanderbilt aka Jedidiah Gordon Schulz," as Defendant ("Nevada Complaint").

135.   The Nevada Complaint was filed in District Court, Family Division, Clark County, Nevada.

136.   The fact that Defendant Nuria Vanderbilt filed the Nevada Complaint is available in the Internet.

137.   The District Court wrote "Case No: D-20-617035-D" on the Nevada Complaint.

138.   In the Nevada Complaint, allegation No. 3 states: "That there is one (1) minor child who is the issue of this marriage or was adopted by the parties and Plaintiff is currently not pregnant. The name and date of birth of the minor child is, to wit: VALENTINO SEVEN SCHULZ RATCLIFF, born July 12, 2018."

139.   In the Nevada Complaint, allegation No. 5 states: "That there is currently an Order of Protection in place pursuant to T-20-208374-T granting temporary physical custody to Plaintiff."

140.   Upon information and belief, Defendant Nuria Vanderbilt obtained an Order of Protection because Defendant Vanderbilt/Schulz acted violently towards her.

141.   According to the Nevada Supreme Court, an Order of Protection is an order issued by a Nevada court that allows an applicant to use the power of a Nevada court to require an adverse party to do, or not to do, certain things.

142.   According to the Nevada Supreme Court, if a person reasonably believes that he/she is the victim of a crime involving stalking and/or harassment, or sexual assault, or if the person is the parent or guardian of a child and such person reasonably believes that such child has been the victim of a crime characterized as harmful to minors then such person may apply for an Order of Protection.

143. Prior to September 17, 2022 Defendant Lyft knew about the Order of Protection against Defendant Vanderbilt/Schulz.

144. Prior to September 17, 2022, Defendant Lyft should have known about the Order of Protection against Defendant Vanderbilt/Schulz.

145. In the Nevada Complaint, allegation No. 6 states:

> That Plaintiff and Defendant relocated to Las Vegas, Nevada on or around April 30, 2020 from Arizona. That Defendant wrongfully, unlawfully and without Plaintiff's permission removed the child from the state of Nevada on or around October 2020.

146. In the Nevada Complaint, allegation No. 7 states: "That pursuant to the UCCJEA the Court should assert emergency jurisdiction over the minor child."

147. In the Nevada Complaint, allegation No. 8 states:

> That upon information and belief, on or around October 8, 2020, Defendant, VALENTINO SATOSHI VANDERBILT, while having temporary physical custody of the minor child in case T-20-208368-T, wrongfully abducted the minor child as defined under NRS 125D.030. Defendant's location is presently unknown. That Plaintiff has not seen the minor child since that time and has been deprived of any contact with the minor child.

148. In the Nevada Complaint, allegation No. 10 states:

> That the Court should issue a "Pick Up Order" or Order for Return of the Child including provisions that the minor child, VALENTINO SEVEN SCHULZ RATCLIFF, born July 12, 2018 be picked up where ever he may be located by any and all law enforcement personnel of Nevada, including but not limited to METRO, or any other jurisdiction including local law enforcement of any jurisdiction where the child may be found. That law enforcement should be authorized and directed to assist in obtaining physical custody of the minor child and his belongings, clothing and personal effects and to

transport the child to CHILD HAVEN located at 701 North Pecos Rd., Las Vegas, Nevada, 89101 or to Plaintiff's care.

149.   In the Nevada Complaint, allegation No. 11 states:

That the Plaintiff, NURIA VANDERBILT, is a fit and proper person to be awarded sole legal custody of the minor child. Due to Defendant's actions in abducting and withholding the child from the Plaintiff, it is not in the best interest of the child to award Defendant either joint or sole legal custody.

150.   In the Complaint, allegation No. 12 states:

That the Plaintiff, NURIA VANDERBILT, is a fit and proper person to awarded sole physical custody of the minor child. Due to Defendant's actions in abducting and withholding the child from the Plaintiff, it is not in the best interest of the child to award Defendant either joint or primary physical custody.

151.   On May 21, 2022, deputies from the Apple Valley Police Department responded to the 13000 block of Cuyamaca Road in the California town of Apple Valley for a report of a disturbance.

152.   Upon arrival, the deputies learned that Defendant Vanderbilt/Schulz refused to return three cats that belonged to a third party.

153.   While Deputy Watson was speaking to Defendant Vanderbilt/Schulz, Deputy Watson could see a child in the living room with several cats running around and noticed an extremely strong odor of cat urine coming from the inside the residence.

154.   Upon entering the home, the deputies discovered over 50 cats, several exotic birds, lizards, and dogs.

155.   The entire the interior of the home was covered in wood chips that the cats used as a litter box.

156. The deputies found a child sleeping in a closet, and his bedding was covered in cat urine.

157. The child was placed in the care of Child Family Services, and Apple Valley Animal Control Officers responded to tend to the animals.

158. Defendant Vanderbilt/Schulz was arrested and booked at the High Desert Detention Center for child cruelty and where he was held in lieu of $100,000.00 bail.

159. With respect to the above events in Apple Valley, the State of California filed a criminal complaint against Defendant Vanderbilt/Schulz with the case titled, People of the State of California vs. Jeddidiah Schulz (Case Number: MVl22002818).

160. In the Court Access Portal of the Superior Court of California - County of San Bernardino in the Alias(s)/Nickname(s) section of the Case Summary for such case, it states:

> Schulz, Jeddidiah
> Valentino Vanderbilt

161. The Superior Court of California, County of San Bernardino, Portal Minute Order dated May 24, 2022, states, inter alia, the following:

> **Plea Information**
>
> Court enters Not Guilty as to Count 001. PC273A(B)-M: Willful Cruelty To Child.
> Court enters Not Guilty as to Count 002. HS11359(B)-M: Possession of Marijuana for Sale.
> Court enters Not Guilty as to Count 003. HS11377(a)-M: Possess Dangerous Drug/Controlled Substances.
>
> .
> .
> .

**Custody Status**

Bail Setting $50,000.00
Defendant remanded into custody

See Exhibit A attached hereto.

162.    On May 25, 2022, Apple Valley, Fox 11 posted an article on the Internet with the headline: **Boy found in closet of Apple Valley home filled with over 50 animals.** The article is attached hereto as Exhibit B. Prior to September 17, 2022, Defendant Lyft had the ability to find this article on the Internet.

163.    On May 25, 2022, Victorville Daily Press posted an article on the Internet with the headline: **Child found living in cat urine-filled home in Apple Valley, man arrested.** The article is attached hereto as Exhibit C. Prior to September 17, 2022, Defendant Lyft had the ability to find this article on the Internet.

164.    Following his arrest in Apple Valley, Defendant Vanderbilt/Schulz posted on the website GoFundMe. Such post is attached hereto as Exhibit D. In such post, Defendant Vanderbilt/Schulz states that he took "a plea deal so I could get out of jail". Prior to September 17, 2022, Defendant Lyft had the ability to find this article on the Internet.

165.    The Superior Court of California, County of San Bernardino, Portal Minute Order dated June 13, 2022, for Case Number MVI22002818 states, inter alia, the following:

**Plea Information**

Defendant pleads No Contest as to count 001. PC273A(B)-M:
Willful Cruelty To Child
Reason: Defendant Changed Plea

As to Count 001. PC273A(B)-M: Willful Cruelty To Child, a Disposition of Convicted - Plea is entered.

**Dismissal**

As to Count 002. HS11359(B)-M: Possession of Marijuana for Sale, a Disposition of Dismissal/Stricken - Motion of the People is entered.
As to Count 003. HS11377(a)-M: Possess Dangerous Drug/Controlled Substances, a Disposition of Dismissal/Stricken - Motion of the People is entered.

**Sentencing Information**

Court orders Misdemeanor Probation as to Count(s): 001. PC273A(B)-M: Willful Cruelty To Child
Summary Probation (Court) is GRANTED for a period of 48 Months.
  **Violate no law
Other Condition: Comply with all court orders regarding son.
Other Condition: Court orders no ability to pay and fees/fines

Serve 48 Days Straight Sentence
Credit Time Served 24 Days Actual 24 Days Conduct Credit
PC 4019 (1/2) Attend/Complete a Child Abuse Prevention Program (52 weeks). for a total of 52 weeks Submit Proof of Enrollment by 7/29/2022.
Submit Proof of Completion by 9/30/2023.

See Exhibit E attached hereto.

166.   Upon information and belief, prior to September 17, 2022, Defendant Vanderbilt/Schulz stole a cat.

167.   Upon information and belief, prior to September 17, 2022, Defendant Vanderbilt/Schulz was charged with theft of a cat in California.

168.   Upon information and belief, prior to September 17, 2022, Defendant Vanderbilt/Schulz illegally purchased a jungle cat.

169.   Upon information and belief, prior to September 17, 2022, Defendant Vanderbilt/Schulz illegally purchased a jungle cat in Colorado.

170.   Upon information and belief, prior to September 17, 2022, Defendant Vanderbilt/Schulz illegally permitted a cat to be released on a commercial airline's airplane.

## FIRST CLAIM FOR RELIEF – Battery
### (Defendant Vanderbilt/Schulz)

171.   The allegations set forth above are incorporated by this reference as if fully rewritten herein.

172.   Defendant Vanderbilt/Schulz committed battery against Plaintiff Alexandra Harris.

173.   Defendant Vanderbilt/Schulz intended to cause harmful contact with Plaintiff Alexandra Harris to occur.

174.   Defendant Vanderbilt/Schulz intended to cause offensive contact with Plaintiff Alexandra Harris to occur.

175.   Defendant Vanderbilt/Schulz caused harmful or offensive contact with Plaintiff Alexandra Harris.

176.   Defendant Vanderbilt/Schulz acted with malice.

177.   Defendant Vanderbilt/Schulz damaged Plaintiff Alexandra Harris.

178.   Plaintiff Alexandra Harris sustained injuries which have caused Plaintiff Alexandra Harris pain, suffering, mental and emotional anguish, and a general decrease in the quality of life.

179.   Plaintiff Alexandra Harris has incurred expenses for medical care, and may continue to incur such expenses in the future.

180.   At this time, Plaintiff Alexandra Harris does not know whether any of the said injuries are permanent and, if so, the extent of the permanency. Plaintiff Alexandra Harris believes and therefore alleges that said injuries may have a permanent, residual effect.

181.   As a direct and proximate result of Defendant Vanderbilt/Schulz's actions, Plaintiff James Harris sustained a loss of consortium as a result of Plaintiff Alexandra Harris's injuries.

182.   Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant Vanderbilt/Schulz and Defendant Nuria Vanderbilt, jointly and severally, as follows:

A.      For damages in an amount to be proven at trial;

B.      For exemplary damages in an amount to be proven at trial;

C.      For Plaintiffs' court costs incurred; and

D.      For such other relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF - Negligent Infliction of Emotional Distress
(All Defendants)**

183.   The allegations set forth above are incorporated by this reference as if fully rewritten herein.

184.   Defendant Vanderbilt/Schulz's negligence caused Plaintiff Alexandra Harris emotional distress.

185.    Defendant Vanderbilt/Schulz's conduct toward Plaintiff Alexandra Harris was negligent.

186.    Defendant Vanderbilt/Schulz's negligence created an unreasonable risk of bodily harm to Plaintiff Alexandra Harris.

187.    Defendant Vanderbilt/Schulz's negligence resulted in physical injury or illness to Plaintiff Alexandra Harris.

188.    Defendant Vanderbilt/Schulz's negligence was a cause of emotional distress to Plaintiff Alexandra Harris.

189.    Defendant Vanderbilt/Schulz damaged Plaintiff Alexandra Harris.

190.    Defendant Lyft is vicariously liable for the damages sustained by Plaintiffs.

191.    As the direct result of the negligence of Defendant Lyft, Plaintiff Alexandra Harris sustained injuries which have caused Plaintiff Alexandra Harris pain, suffering, mental and emotional anguish, and a general decrease in the quality of life.

192.    As a further result of the negligence of Defendant Lyft, Plaintiff Alexandra Harris has incurred expenses for medical care, and may continue to incur such expenses in the future.

193.    At this time, Plaintiff Alexandra Harris does not know whether any of the said injuries are permanent and, if so, the extent of the permanency. Plaintiff Alexandra Harris believes and therefore, alleges that said injuries may have a permanent, residual effect.

194.    As a direct and proximate result of Defendants' actions, Plaintiff James Harris sustained a loss of consortium as a result of Plaintiff Alexandra Harris's injuries.

1    **WHEREFORE**, Plaintiffs pray for judgment against all Defendants, jointly and

2    severally, as follows:

3        A.    For damages in an amount to be proven at trial;

4        B.    For Plaintiffs' court costs incurred; and

5        C.    For such other relief as the Court deems just and proper.

6    **THIRD CLAIM FOR RELIEF - Intentional Infliction of Emotional Distress**
7    **(All Defendants)**

8        195.    The allegations set forth above are incorporated by this reference as if fully

9    rewritten herein.

10        196.    Defendant Vanderbilt/Schulz intentionally or recklessly caused Plaintiff

11    Alexandra Harris emotional distress.

12        197.    Defendant Vanderbilt/Schulz's objective was to cause Plaintiff Alexandra

13    Harris to experience emotional distress.

14
15        198.    Defendant Vanderbilt/Schulz was aware of and disregarded the near

16    certainty that his conduct would result in emotional distress for Plaintiff Alexandra

17    Harris.

18        199.    Defendant Vanderbilt/Schulz's conduct was extreme and outrageous.

19
20        200.    Defendant Vanderbilt/Schulz's conduct was either intentional or reckless.

21        201.    Defendant Vanderbilt/Schulz's conduct caused Plaintiff Alexandra Harris

22    to suffer severe emotional distress.

23        202.    Defendant Vanderbilt/Schulz knew that Plaintiff Alexandra Harris is

24    particularly susceptible to emotional distress.

25        203.    Defendant Vanderbilt/Schulz's conduct was not privileged.

204.    Defendant Vanderbilt/Schulz had no legitimate purpose for his conduct.

205.    Defendant Lyft is vicariously liable for the damages sustained by Plaintiffs.

206.    As the direct result of the negligence of Defendant Lyft, Plaintiff Alexandra Harris sustained injuries which have caused Plaintiff Alexandra Harris pain, suffering, mental and emotional anguish, and a general decrease in the quality of life.

207.    As a further result of the negligence of Defendant Lyft, Plaintiff Alexandra Harris has incurred expenses for medical care, and may continue to incur such expenses in the future.

208.    At this time, Plaintiff Alexandra Harris does not know whether any of the said injuries are permanent and, if so, the extent of the permanency. Plaintiff Alexandra Harris believes and therefore, alleges that said injuries may have a permanent, residual effect.

209.    As a direct and proximate result of Defendants' actions, Plaintiff James Harris sustained a loss of consortium as a result of Plaintiff Alexandra Harris's injuries.

210.    Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE**, Plaintiffs pray for judgment against all Defendants, jointly and severally, as follows:

A.    For damages in an amount to be proven at trial;

B.    For exemplary damages in an amount to be proven at trial;

C.    For Plaintiffs' court costs incurred; and

D.    For such other relief as the Court deems just and proper.

1

2

## FOURTH CLAIM FOR RELIEF - Negligent Hiring, Retention, Supervision
### (Defendant Lyft)

3    211.   The allegations set forth above are incorporated by this reference as if fully

4    rewritten herein.

5    212.   At all relevant times, Defendant Lyft had a policy which stated:

6    **Smart Trip Check-In**

7
      We monitor rides for unusual activity, like long stops or route
8    deviations. If we notice anything off about your ride, we'll
      contact you to see if you need help.

9    213.   At all relevant times, Defendant Lyft had a policy which stated, <u>inter</u> <u>alia</u>,

10   "Our proactive safety measures are always on."

11

12   214.   At all relevant times, Defendant Lyft had a policy which stated, <u>inter</u> <u>alia</u>,

13   **Annual driver background checks**

14   All drivers must pass a background check before driving with
      Lyft. After that, they're required to pass an annual
15   background check. We also continuously monitor for criminal
      convictions. And when necessary, we deactivate drivers.

16

17   215.   At all relevant times, Defendant Lyft had a policy which stated, <u>inter</u> <u>alia</u>,

18   **Mandatory driver safety education**

19   All drivers must complete a safety program developed with
      RAINN, the largest anti-sexual violence organization in
20   North America.

21   216.   At all relevant times, Defendant Lyft had a policy which stated, <u>inter</u> <u>alia</u>,

22
      For the background check, U.S. drivers must provide a valid
23   social security number. Background checks are then run by a
      third-party company, Checkr, Inc.

24

25

217.   At all relevant times, Defendant Lyft had a policy which stated, inter alia, "We'll conduct continuous criminal and driving record monitoring of active drivers."

218.   Pursuant to Arizona law, a company conducting an activity through its employees or other agents is subject to liability for harm resulting from such company's conduct if the company is negligent or reckless in permitting, or failing to prevent, tortious conduct by its employees or agents.

219.   Pursuant to Arizona law, a company conducting an activity through its employees or other agents is subject to liability for harm resulting from such company's conduct if the company is negligent or reckless in the supervision of the activity of its employees or agents.

220.   In Arizona, claims for negligent hiring and employment are governed by Section 213 of the Restatement (Second) of Agency. Comment (d) to Section 213 states:

> One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation. Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

*Kassman v. Busfield Enters.*, 131 Ariz. 163, 166, 639 P.2d 353, 356 (1981) (citing Restatement (Second) of Agency § 213, Comment (d)).

221. Defendant Lyft negligently hired, retained and/or supervised Defendant Vanderbilt/Schulz.

222. Defendant Lyft owed a duty to the public in general and to Plaintiffs in particular to exercise reasonable care in hiring, supervising, and continuing to employ and/or authorize Defendant Vanderbilt/Schulz.

223. Prior to September 17, 2022, Defendant Lyft knew about some or all of Defendant Vanderbilt/Schulz's history of wrongful actions.

224. Prior to September 17, 2022, Defendant Lyft should have known some or all of Defendant Vanderbilt/Schulz's history of wrongful actions.

225. Defendant Lyft knew or should have known Defendant Vanderbilt/Schulz would be likely to injure a person such as Plaintiff Alexandra Harris.

226. Defendant Lyft should not have permitted Defendant Vanderbilt/Schulz to provide transportation as a Lyft driver to Plaintiff Alexandra Harris.

227. Defendant Lyft negligently supervised Defendant Vanderbilt/Schulz while he was transporting Plaintiff Alexandra Harris.

228. Defendant Lyft breached its duties of care, directly and proximately causing damages sustained by Plaintiffs.

229. Defendant Lyft failed to prevent the tortious conduct of Defendant Vanderbilt/Schulz.

230. Defendant Lyft is liable for the damages sustained by Plaintiffs.

231.   As the direct result of the negligence of Defendant Lyft, Plaintiff Alexandra Harris sustained injuries which have caused Plaintiff Alexandra Harris pain, suffering, mental and emotional anguish, and a general decrease in the quality of life.

232.   As a further result of the negligence of Defendant Lyft, Plaintiff Alexandra Harris has incurred expenses for medical care, and may continue to incur such expenses in the future.

233.   At this time, Plaintiff Alexandra Harris does not know whether any of the said injuries are permanent and, if so, the extent of the permanency. Plaintiff Alexandra Harris believes and therefore, alleges that said injuries may have a permanent, residual effect.

234.   As a direct and proximate result of Defendant Lyft's actions, Plaintiff James Harris sustained a loss of consortium as a result of Plaintiff Alexandra Harris's injuries.

235.   Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant Lyft, as follows:

A.   For damages in an amount to be proven at trial;

B.   For exemplary damages in an amount to be proven at trial;

///

///

///

C.    For Plaintiffs' court costs incurred; and

D.    For such other relief as the Court deems just and proper.

DATED this _2 1_ day of December, 2022.


                            THE BREBNER LAW FIRM, P.C.


                            _____
                            Bartlet A. Brebner
                            *Attorney for Plaintiffs*

# EXHIBIT "A"



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN BERNARDINO**
**Rancho Cucamonga District**
**8303 Haven Avenue**
**Rancho Cucamonga, CA 91730**
**www.sb-court.org**

# PORTAL MINUTE ORDER

**Case Number: MVI22002818**                                                          **Date: 5/24/2022**

**Case Title: People of the State of California vs. Jeddidiah Schulz**

| Videos - Victorville | Date: 5/24/2022 | Time: 1:30 PM | Video Arraignment |
|---|---|---|---|

**Charges:  PC273A(B)-M, HS11359(B)-M, HS11377(A)-M**

Judicial Officer: Bryan K Stodghill
Judicial Assistant: Marisol Mendez
Court Reporter: Not Reported or Recorded
Bailiff: M Milani
Minutes updated by Martha Robles

**Appearances**

Public Defender Valarie Young present
Defendant present in custody- present in County Jail (via video)

**Attorney Information**

Public Defender Appointed

**Proceedings**

Defendant Arraigned on Complaint

Defendant Advised of Rights

**Plea Information**

Court enters Not Guilty as to Count  001. PC273A(B)-M: Willful Cruelty To Child.
Court enters Not Guilty as to Count  002. HS11359(B)-M: Possession of Marijuana for Sale.
Court enters Not Guilty as to Count  003. HS11377(a)-M: Possess Dangerous Drug/Controlled Substances.

**Hearings**

In-Custody Pretrial set for 5/26/2022 at 8:31 AM in Department V6 - Victorville
Defendant ordered to appear.

Also set for Bail/OR
30TH: 6/23

**Waivers**

30th day is:  6/23/2022

**Custody Status**

Bail Setting $50,000.00

Defendant remanded into custody

District Attorney Notified

Public Defender Notified

**== Minute Order Complete ==**

EXHIBIT "B"

**Watch Live**

# Boy found in closet of Apple Valley home filled with over 50 animals

By Alexa Mae Asperin  | Published May 25, 2022  | Apple Valley  | FOX 11  |

**APPLE VALLEY, Calif.** - A child has been placed with Child Family Services in Apple Valley after he was discovered in a home filled with wood chips and over 50 animals ranging from exotic birds to cats on the property.

Deputies responded to a home in the 13000 block of Cuyamaca Road on May 21 just after 6 p.m. to investigate a reported disturbance.

At the home, deputies said they found the suspect, 38-year-old Jeddidiah Schulz, refusing to return three cats that belonged to the person who reported him to authorities.

While speaking with Schulz, authorities noticed a child in the living room with several cats running around. Authorities also smelled an extremely strong odor of cat urine coming from inside the home.

Once inside, authorities discovered over 50 cats, several exotic birds, lizards, and dogs.

Authorities said the entire home was covered with wood chips that the cats used as a litter box.

**TOP STORIES**                                                                      

**World Cup 2026: Focus soon shifts to LA as SoFi Stadium will host or**
As the 2022 FIFA World Cup wraps up this weekend  all eyes will shift to North America for the next tournament

The child was placed in the care of Child Family Services and the recovered animals were tended to by Apple Valley Animal Control.

Schulz was arrested for child cruelty and is being held in lieu of $100,000 bail.

Anyone with information about this investigation is asked to contact Deputy Watson or Detective Lenihan at the Apple Valley Police Department at (760) 240-7400 or Sheriff's Dispatch at (760) 956-5001. Callers wishing to remain anonymous are urged to call the We-Tip Hotline at 1-800-78-CRIME (27463) or you may leave the information on the We-Tip website at www.wetip.com.

Ad Content by Taboola |

**Breaking Down Barriers: Meet Charity**

Sponsored | Phoenix Children's

**This "Botox Alternative" Sold Out At Target (in Just 2 Days)**

Sponsored | Vibriance

This material may not be published, broadcast, rewritten, or redistributed. ©2022 FOX Television Stations

**TOP STORIES**                                                                                                 ✕

**World Cup 2026: Focus soon shifts to LA as SoFi Stadium will host on**
As the 2022 FIFA World Cup wraps up this weekend  all eyes will shift to North America for the next tournament

EXHIBIT "C"

# DAILY PRESS

NEWS

# Child found living in cat urine-filled home in Apple Valley, man arrested



**Rene Ray De La Cruz**
Victorville Daily Press

Published 1:09 p.m. PT May 25, 2022 | Updated 1:13 p.m. PT May 25, 2022

An Apple Valley man was arrested after a sheriff's deputy discovered an animal-filled home where a child slept on a bed covered in cat urine.

Jeddidiah Schulz, 38, on Wednesday remained at the High Desert Detention Center in Adelanto for suspected child cruelty. His bail is set at $100,000, San Bernardino County Sheriff's booking records show.

The Apple Valley Sheriff's Station said that at approximately 6:10 p.m. on Saturday, deputies responded to a report of a disturbance in the 13000 block of Cuyamaca Road.

Upon arrival, a deputy learned that Schulz had refused to return three cats that belonged to the reporting party.

While speaking to Schulz, Deputy Watson witnessed a young boy in the living room with several cats running around. He also noticed an extremely strong odor of cat urine coming from inside the residence.

After entering the residence, the deputy located over 50 cats, several exotic birds, lizards and dogs. The entire home was covered with wood chips that the cats used as a litter box, sheriff's officials said.

The deputy also discovered that the child was sleeping in a closet and his bedding was covered in cat urine, authorities said.

The child was placed in the care of Child Family Services and Apple Valley Animal Control Officers responded to tend to the animals.

Sheriff's officials did not indicate how Schulz was associated with the boy.

Anyone with information about this investigation is asked by the Sheriff's Department to contact Deputy Watson or Detective Lenihan at the Apple Valley Sheriff's Station at 760-240-7400 or Sheriff's Dispatch at 760-956-5001.

Callers wishing to remain anonymous are urged to call the We-Tip Hotline at 1-800-78-CRIME (27463) or you may leave the information on the We-Tip website at wetip.com.

***Daily Press reporter Rene Ray De La Cruz may be reached at 760-951-6227 or RDeLaCruz@VVDailyPress.com. Follow him on Twitter @DP_ReneDeLaCruz***

# EXHIBIT "D"



# Bring Juni Home and stop SBSD brutality



**$434** raised of $1 goal

10 donations

**Share**

**Donate now**

👤 Anonymous
$20 • 3 mos

👤 I Kinard
$20 • 3 mos

👤 Mikaela Janecek
$40 • 3 mos

👤 Ryan Collins
$24 • 3 mos

👤 Anonymous
$50 • 3 mos

See all     ☆     See top donations     See top

👤 Valentino Vanderbilt is organizing this fundraiser.

Please visit our YouTube channel Two Jungle Boys to see the truth (Link below)

https://youtube.com/user/jgordonschulz

for video updates regarding the illegal San Bernardino California County sheriffs deputies and CPS workers sanctioned kidnapping of my baby boy "Juni" and myself on 05/21/2022.
Hi everyone, on 05/21/2022 my beautiful 3 year son and I were returning home from grocery shopping when we noticed a burglary by a man we were cat-sitting for in progress at our home, so I called 911 to report it, when the deputies arrived they let the burglar go and forcibly entered our property without warrant or just cause, they went so far as to brutally chicken wing me to the ground while my little guy was holding on to my leg trying

to protect his daddy. They placed me under arrest on false pretext and charges, again with no warrant or evidence to back up the claims. Video recorded by myself and 48 minutes of audio also recorded by myself during the event contradict all the false claims made by the deputies and CPS who kidnapped my son



and placed him in the custody of his physically abuse biological mother while I was locked up in county jail on a false charge of child cruelty, I

wasn't allowed a real court hearing and the public pretender assigned to my case didn't use my testimony, witnesses, or evidence that was submitted her, I was coerced to take a plea deal so I could get out of jail and tell my story. All of me and my sons beloved pets were confiscated and are still in jail themselves, our home was pillaged and plundered down to the toilet paper, a huge false news story was broadcast in order to defame me and many other corrupt deeds were committed by all the officials involved, notwithstanding this the landlord has refused to address multiple serious habitability issues including broken sewer pipes, gas leaks, roof and structural damage, broken doors, and more, he is connected with the deputies and arrived with them, they all colluded

together to render me homeless and keep me silenced so they can continue robbing, ripping off and defaming other innocent victims. I am starting multiple lawsuits against all the parties who have a hand in this evil and I have evidence to trash them all in court, however, I need cash to retain a legal team and get another home so I can get my son back to the life he loves and get his pets back as well. Please help in any way you can, God bless you.





| Donate | Share |
|--------|-------|

## Organizer



**Valentino Vanderbilt**
Organizer
Apple Valley, CA

| Contact |
|---------|

## Words of support (1)

Please donate to share words of support.



**Karem Santandreu**
$40 ✵ 3 mos

Uplifting you boys in prayer

Created June 17, 2022   •   🏷 <u>Family</u>

🚩 Report fundraiser

# Your easy, powerful, and trusted home for help.



**Easy**
Donate quickly and easily



**Powerful**
Send help right to the people and causes you care about



**Trusted**
Your donation is protected by the GoFundMe Giving Guarantee

gofundme

Choose your language

English ( ⌄ )

| Fundraise for | Learn more | Resources |
|---|---|---|
| Medical | How GoFundMe works | Help center |
| Emergency | Why GoFundMe | Blog |
| Memorial | Common questions | GoFundMe Stories |
| Education | Success stories | Press center |
| Nonprofit | Supported | Careers |
|  |  | About |

countries

**Team fundraising**

**Donate button**

**Support COVID-19 fundraisers**

© 2010-2022 GoFundMe    <u>Terms</u>    <u>Privacy</u>    <u>Legal</u>

 



# This video isn't available anymore

**GO TO HOME**



This page isn't available. Sorry about that.
Try searching for something else.

 Search                              Q

**Donations (10)**   ☆ **See top donations**   ✕

---

**Donate now**

---

👤 · Anonymous
**$20** • 3 mos

👤 I Kinard
**$20** • 3 mos

👤 Mikaela Janecek
**$40** • 3 mos

👤 Ryan Collins
**$24** • 3 mos

Join this list. <u>Donate now.</u>

👤 Anonymous
**$50** • 3 mos

👤 Anonymous
**$50** • 3 mos

👤 Anonymous
**$100** • 3 mos

👤 Edward Dowdy
**$50** • 3 mos

👤 Karem Santandreu

## Donations (10)          ☆ **See top donations**          ✕

---

**Donate now**

---

$20 • 3 mos

**Mikaela Janecek**
**$40** • 3 mos

**Ryan Collins**
**$24** • 3 mos

Join this list. **Donate now.**

**Anonymous**
**$50** • 3 mos

**Anonymous**
**$50** • 3 mos

**Anonymous**
**$100** • 3 mos

**Edward Dowdy**
**$50** • 3 mos

**Karem Santandreu**
**$40** • 3 mos

**Christine Cate**
**$40** • 3 mos

# EXHIBIT "E"



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN BERNARDINO**
**Victorville District**
**14455 Civic Drive, Suite 200**
**Victorville, CA 92392**
**www.sb-court.org**

# PORTAL MINUTE ORDER

**Case Number: MVI22002818**                                                  **Date: 6/13/2022**

**Case Title: People of the State of California vs. Jeddidiah Schulz**

| Department V8 - Victorville | Date: 6/13/2022 | Time: 8:00 AM | Trial Recall Hearing |
|---|---|---|---|

**Charges:  PC273A(B)-M, HS11359(B)-M, HS11377(A)-M**

Judicial Officer: John P Vander Feer
Judicial Assistant: Jennifer Schnittger
Court Reporter: Numia Fata
Bailiff: B Kirkendall

**Appearances**

District Attorney RYAN KING present
Public Defender DOLCE CARDOZO present
Defendant present in custody

**Proceedings**

*THIS IS A PLEA TO THE COURT*
Plea Bargain Agreement Filed
Tahl Waiver filed
The Court, after re-advisement of each of these rights, finds that the Defendant understands the charge(s), the
possible penalties, right against self-incrimination, to confront and cross examine witnesses, to a public and speedy
trial, to Jury trial, to have an attorney present at all stages of the proceedings and to the Public Defender if indigent
and to the compulsory process of the court to subpoena witnesses. The defendant freely, voluntarily, knowingly,
intelligently, expressly waives these rights in open court.
Formal arraignment for Pronouncement of Judgment is waived; no legal cause why Judgment should not now be
pronounced.

**Plea Information**

Defendant pleads No Contest as to count 001. PC273A(B)-M: Willful Cruelty To Child
Reason:  Defendant Changed Plea

As to Count 001. PC273A(B)-M: Willful Cruelty To Child, a Disposition of Convicted - Plea is entered.

**Dismissal**

As to Count 002. HS11359(B)-M: Possession of Marijuana for Sale, a Disposition of Dismissal/Stricken - Motion of the People is entered.
As to Count 003. HS11377(a)-M: Possess Dangerous Drug/Controlled Substances, a Disposition of Dismissal/Stricken - Motion of the People is entered.

**Sentencing Information**

Court orders Misdemeanor Probation as to Count(s):
001. PC273A(B)-M: Willful Cruelty To Child


Summary Probation (Court) is GRANTED for a period of 48 Months.

\*\*Violate no law

Other Condition: Comply with all court orders regarding son.

Other Condition: Court orders no ability to pay and fees/fines




Serve 48 Days Straight Sentence

Credit Time Served 24 Days Actual 24 Days Conduct Credit PC 4019 (1/2)

Attend/Complete a Child Abuse Prevention Program (52 weeks).   for a total of 52 weeks Submit Proof of Enrollment by 7/29/2022.
Submit Proof of Completion by 9/30/2023.


Court does no issues any protective orders due to the fact the mother has full custody of the child.
Copy of minute order given to defendant.
Order for Release Form printed

**Custody Status**

Case Custody - Probation

== Minute Order Complete ==

# EXHIBIT 2

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
12/21/2022 7:19:53 PM
Filing ID 15301067

**Plaintiff's Attorney:**

Bartlet A. Brebner
Bar Number: 011785, issuing State: AZ
Law Firm: The Brebner Law Firm, P.C.
4647 N. 32nd Street, Suite 285
Phoenix, AZ 85018
Telephone Number: (602)230-9554
Email address: bbrebner@brebnerlaw.com

CV2022-016907

**Plaintiffs:**

Alexandra Lee Harris

James Leo Harris

**Defendants:**

Valentino Satoshi Vanderbilt, AKA Jeddidiah Schulz
1450 South Cooper Road, Apt. 2039
Chandler, AZ 85286

Nuria Vanderbilt

Lyft, Inc.
3800 North Central Avenue, Suite 460
Phoenix, AZ 85012

Discovery Tier t3

Case Category: Tort Non-Motor Vehicle
Case Subcategory: Intentional Tort

AZTurboCourt.gov Form Set #7512340

12-29-22/ 2:52 pr

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
12/21/2022 7:19:53 PM
Filing ID 15301071

Person/Attorney Filing: Bartlet A. Brebner
Mailing Address: 4647 N. 32nd Street, Suite 285
City, State, Zip Code: Phoenix, AZ 85018
Phone Number: (602)230-9554
E-Mail Address: bbrebner@brebnerlaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011785, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Alexandra Lee Harris, et al.
Plaintiff(s),
v.
Valentino Satoshi Vanderbilt, AKA
Jeddidiah Schulz, et al.
Defendant(s).

Case No. **CV2022-016907**

**SUMMONS**

To: Lyft, Inc.

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
   Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

AZturboCourt.gov Form Set #75/12340

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *December 21, 2022*

*JEFF FINE*
Clerk of Superior Court

By: *LAURA MARTINEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #75123340

2

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
12/21/2022 7:19:53 PM
Filing ID 15301070

Person/Attorney Filing: Bartlet A. Brebner
Mailing Address: 4647 N. 32nd Street, Suite 285
City, State, Zip Code: Phoenix, AZ 85018
Phone Number: (602)230-9554
E-Mail Address: bbrebner@brebnerlaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011785, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Alexandra Lee Harris, et al.
Plaintiff(s),
v.
Valentino Satoshi Vanderbilt, AKA
Jeddidiah Schulz, et al.
Defendant(s).

Case No.  **CV2022-016907**

**SUMMONS**

To: Nuria Vanderbilt

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *December 21, 2022*

*JEFF FINE*
Clerk of Superior Court

By: *LAURA MARTINEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #7512340

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
12/21/2022 7:19:53 PM
Filing ID 15301069

Person/Attorney Filing: Bartlet A. Brebner
Mailing Address: 4647 N. 32nd Street, Suite 285
City, State, Zip Code: Phoenix, AZ 85018
Phone Number: (602)230-9554
E-Mail Address: bbrebner@brebnerlaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011785, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Alexandra Lee Harris, et al.
Plaintiff(s),
v.
Valentino Satoshi Vanderbilt, AKA
Jeddidiah Schulz, et al.
Defendant(s).

Case No.  **CV2022-016907**

**SUMMONS**

To: Valentino Satoshi Vanderbilt, AKA Jeddidiah Schulz

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *December 21, 2022*

*JEFF FINE*
Clerk of Superior Court

By: *LAURA MARTINEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #751234d

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
12/21/2022 7:19:53 PM
Filing ID 15301068

Person/Attorney Filing: Bartlet A. Brebner
Mailing Address: 4647 N. 32nd Street, Suite 285
City, State, Zip Code: Phoenix, AZ 85018
Phone Number: (602)230-9554
E-Mail Address: bbrebner@brebnerlaw.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 011785, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Alexandra Lee Harris, et al.<br>Plaintiff(s),<br>v.<br>Valentino Satoshi Vanderbilt, AKA<br>Jeddidiah Schulz, et al.<br>Defendant(s). | Case No. **CV2022-016907**<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.


RESPECTFULLY SUBMITTED this                                    .


By: Bartlet A. Brebner /s/
Plaintiff/Attorney for Plaintiff

# EXHIBIT 3



Select Language   ▼

Powered by Google **Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2022-016907 | Judge: | Astrowsky, Brad |
| File Date: | 12/21/2022 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Alexandra Lee Harris | Plaintiff | Female | Bartlet Brebner |
| James Leo Harris | Plaintiff | Male | Bartlet Brebner |
| Valentino Satoshi Vanderbilt | Defendant | Male | Pro Per |
| Nuria Vanderbilt | Defendant | Female | Pro Per |
| Lyft Inc | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 1/6/2023 | AFS - Affidavit Of Service | 1/11/2023 | |
| **NOTE:** LYFT INC | | | |
| 12/21/2022 | COM - Complaint | 12/22/2022 | |
| **NOTE:** Complaint | | | |
| 12/21/2022 | CSH - Coversheet | 12/22/2022 | |
| **NOTE:** Civil Cover Sheet | | | |
| 12/21/2022 | CCN - Cert Arbitration - Not Subject | 12/22/2022 | |
| **NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To | | | |
| 12/21/2022 | SUM - Summons | 12/22/2022 | |
| **NOTE:** Summons | | | |
| 12/21/2022 | SUM - Summons | 12/22/2022 | |
| **NOTE:** Summons | | | |
| 12/21/2022 | SUM - Summons | 12/22/2022 | |
| **NOTE:** Summons | | | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

# EXHIBIT 4

# CHANDLER POLICE DEPARTMENT
**General Offense Report**

Follow Up Report # CH  2

APPLE VALLEY POLICE DEPARTMENT (MN) AND SAN BERNARDINO COUNTY SHERIFF'S OFFICE REPORTS:
Apple Valley (MN): ▮▮▮▮▮▮▮ ; ▮▮▮▮▮▮▮
San Bernardino County Sheriff's Department: ▮▮▮▮▮

Printed On: **Nov-25-2022  (Fri.)**

# CHANDLER POLICE DEPARTMENT
## General Offense Report

Follow Up Report # CH 2

I conducted a criminal history check of Valentino Vanderbilt and learned he had another identity of Jedidiah Schulz. According to a police report authored by San Bernardino County Sheriff's Department (report number ▮▮▮▮▮▮), Valentino legally changed his name in 2018. In this report, the deputy documented that Valentino had stolen at least one cat and refused to return it to the owner. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Protective Services who provided them with contact information for Nuria Vanderbilt, who lived in Minnesota. Nuria reported that, while living in Las Vegas, she and Valentino were married. He became violent towards her, prompting her to file for an order of protection. While filing the paperwork, Vanderbilt (AKA Jedidiah), took their belongings and their son and fled the State of Nevada.

I contacted Deputy K. Watson #D3404 from San Bernardino County Sheriff's Office and confirmed that Valentino was not pending any charges from his case. I asked if Valentino had been the subject of a kidnapping investigation. Deputy Watson informed me that Clark County Sheriff's Office (Nevada) had been contacted and no kidnapping report was ever filed by Nuria. Deputy Watson told me Valentino may have pending federal charges in the State of Colorado for the illegal purchase of a large jungle cat which escaped its containment during its transit by air. This information could not be confirmed at the time of this report.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮: Nuria Vanderbilt arrived to the AVPD lobby and requested to file a missing persons report regarding her son who was with Valentino in California. Officer P. Meuwissen #4917 spoke with her. She requested that the report made to AVPD be forwarded to Las Vegas Metropolitan Police Department. It is not known from this report if any information was forwarded to LVMPD.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



# CHANDLER POLICE DEPARTMENT

**General Offense Report**

Follow Up Report # CH  2

I went to 1450 South Cooper Road #2039 and contacted Jana Treglown who informed me that Valentino left Arizona and may possibly be in San Antonio, Texas. Jana stated Valentino could also be in Colorado or California. Jana further informed me that Valentino had only been in town for a few days and was not their roommate as he stated.